This case was brought and tried on the theory that plaintiff was and acted as an invitee of defendant. Defendant opposed that theory and contended plaintiff at most was a mere licensee and defendant owed him no greater duty than to refrain from inflicting on him wilful or wanton injury. We contend the undisputed evidence shows that plaintiff was on the premises of defendant and at the garage thereon as an invitee of defendant and that he did as an invitee all he did, and that his presence and acts could be nothing but those of an invitee.
Manifestly, an invitee is one who is invited, expressly or impliedly; one who receives an invitation, express or implied. (Howe v. Ohmart, 7 Ind. App. 32, 33 N.E. 466.) "It is not necessary that the invitation should be special or even direct. It may be implied from the circumstances and facts of the case." (Id.; Jonosky v. Northern Pacific Ry. Co., 57 Mont. 63, 73,187 P. 1014; Petree v. Davison-Paxon-Stokes Co.,30 Ga. App. 490, 118 S.E. 697; Kruntorad v. Chicago, R.I. P. Ry.Co., 111 Neb. 753, 197 N.W. 611; Lucas v. Kelley, 102 Vt. 173,147 A. 281 (a very analogous case on principle); Painter
v. Hudson Trust Co., 2 N.J. Misc. 1137, 126 A. 636; Davis
v. Central Congregational Society, 129 Mass. 367, 37 Am. Rep. 368; Larson v. Red River Transp. Co., 111 Minn. 427,127 N.W. 185, very similar on principle to the case at bar.)
What duty does an inviter owe to his invitee? It is "to use reasonable care for his safety." (Liston v. Reynolds,69 Mont. 480, 494, 223 P. 507.) "A person upon the private property of another by invitation, express or implied, is there rightfully and to him the land owner owes the positive duty to exercise reasonable care for his safety." (Fusselman v.Yellowstone Valley L. I. Co., 53 Mont. 254, 258,163 P. 473, Ann. Cas. 1918B, 420.) "The owner or occupant of real property is under the duty of exercising reasonable or ordinary care and prudence to the end of keeping his premises safe for the benefit of those who come upon them by his invitation, express or implied." (Montague v. Hanson, 38 Mont. 376, 383,99 P. 1063.) "The owner of land owes the duty of exercising reasonable care in protecting the invitee from injury through his *Page 138 
negligence." (Chichas v. Foley Bros. Gro. Co., 73 Mont. 575,582, 236 P. 361.) "Ordinary and reasonable care is that degree of care which prudent persons in the circumstances of each case would be likely to exercise." (Nangle v. Northern P. Ry.Co., 96 Mont. 522, 32 P.2d 11.) "Ordinary care means the degree of care which would be used by a person of common prudence in similar circumstances." (Groom v. Kavanagh,97 Mo. App. 362, 71 S.W. 362, 365.)
Was defendant negligent? "Negligence is the want of ordinary care; that is such care as an ordinarily prudent man would exercise in the place of, and under the same circumstances as, the party charged with negligence." (St. Louis S.F. Ry. Co.
v. Dodd, 59 Ark. 317, 27 S.W. 227.) "Negligence is absence of due care under the circumstances." (Nord v. Boston M.C.C. S.M. Co., 30 Mont. 48, 59, 75 P. 681.) "Ordinary negligence is the absence of ordinary and reasonable care." (Nangle v.Northern P. Ry. Co., supra.) "Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation or doing what such a person under the existing circumstances would not have done." (Birsch v. Citizens' Electric Co., 36 Mont. 574, 579,93 P. 940.)
The definition last above has been repeatedly reaffirmed by this court. (Flaherty v. Butte Electric Ry. Co., 40 Mont. 454,463, 107 P. 416, 135 Am. St. Rep. 630; Zanos v. GreatNorthern Ry. Co., 60 Mont. 17, 21, 198 P. 138; Kakos v.Byram, 88 Mont. 309, 320, 292 P. 909; Harrington v. H.D.Lee Merc. Co., 97 Mont. 40, 62, 33 P.2d 553; In reMullen's Estate, 97 Mont. 144, 152, 33 P.2d 270.) "Ordinary and reasonable care is that degree of care which prudent persons in the circumstances of each case would be likely to exercise." (Nangle v. Northern P. Ry. Co., supra.) Did defendant act with ordinary and reasonable care in what he did? If not, inevitably he was guilty of negligence. We contend he did not.
Defendant was supposed and required by law to know there was danger of the wings on his truck falling, when upright and unfastened, by any jar. It was incumbent on him to know *Page 139 
it. (Hollingsworth v. Davis-Daly Estates Copper Co., 38 Mont. 143,151, 99 P. 142; Davis v. Freisheimer, 68 Mont. 322,329, 219 P. 236.) Any person, being the owner, of ordinary intelligence would have known it. Adequate inspection of his property would have disclosed to defendant that the wings standing upright and unfastened constituted a source of danger when the truck was in motion, and it was his duty to give such inspection. (Lonergan v. American Ry. Express Co.,250 Mass. 30, 144 N.E. 756, 757.) When the owner of premises creates a dangerous condition thereon, he is held in law to have knowledge thereof; knowledge does not have to be shown; it is presumed; and the owner is liable for all damage ensuing and of which such dangerous condition is the proximate cause. (Robinson v. F.W.Woolworth Co., 80 Mont. 431, 261 P. 253.) In the case at bar, defendant created a dangerous condition. He asked plaintiff to hold open the garage door and put himself in a dangerous position, when defendant knew (and plaintiff did not know and could not because of the darkness) the wings were up and were not fastened. Defendant caused that dangerous condition and he is liable for what resulted therefrom.
The case should have gone to the jury. (Cameron v. KenyonConnell Com. Co., 22 Mont. 312, 322, 56 P. 358, 74 Am. St. Rep. 602, 44 L.R.A. 508; Cain v. Gold Mt. Min. Co., 27 Mont. 529,535, 71 P. 1004; Jepsen v. Gallatin Valley Ry. Co.,59 Mont. 125, 136, 195 P. 550; Vonault v. O'Rourke, 97 Mont. 92,107, 33 P.2d 535; Harrington v. H.D. Lee Merc. Co., supra.) If there is any substantial evidence at all tending to support plaintiff's cause of action, it should go to a jury. (Carey v. Guest, 78 Mont. 415, 258 P. 236; Remesz v.City of Glasgow, 95 Mont. 595, 28 P.2d 468; Claypool v.Malta Standard Garage, 96 Mont. 285, 288, 30 P.2d 89;Stranahan v. Independent Nat. Gas Co., 98 Mont. 597, 606,41 P.2d 39.) Negligence is an inference. It is to be inferred by a jury from facts proved. (Nord v. Boston M.C.C. S.M.Co., supra.) It is the peculiar province of a jury to make such inference or not. It can be arrived at only by inference from facts in evidence and that is for a jury. (Id.) *Page 140 
Counsel for appellant contend, first, "that plaintiff was on the premises of defendant and at the garage thereon as an invitee." They say in substance that the invitation to the plaintiff in this case "may be express or implied." And again, "We contend that from the moment plaintiff went to defendant's home, the evening of October 14, 1933, until he was hurt and at the time he was hurt he was an invitee." "Invitee" has sometimes been referred to as a "troublesome word." It is difficult, if not impossible, to find any invariable test of the difference between "invitee" and "licensee." However, the rule is generally recognized that when the inducement for one to go upon the premises of another is for some benefit to the owner or occupant, or their mutual benefit, the status of invitor and invitee is created in respect to the premises upon which the entry is made. But where the inducement to make the entry is for the benefit, convenience or pleasure of the person entering, then the status is that of licensor and licensee. (20 R.C.L. 69, 70, sec. 60;Jonosky v. Northern Pacific Ry. Co., supra; John P.Pettyjohn Sons v. Basham, 126 Va. 72, 100 S.E. 813, 38 A.L.R. 391; Boneau v. Swift Co., (Mo.App.)66 S.W.2d 172, 176; Purtell v. Philadelphia Reading Coal Iron Co.,256 Ill. 110, 99 N.E. 899, Ann. Cas. 1913E, 335, 43 L.R.A. (n.s.) 193.) Even an express invitation to enter upon premises will not create the legal status of invitor and invitee where the invitation was for some benefit of the invitee. (L.E. Myers'Co. v. Logue's Admr., 212 Ky. 802, 280 S.W. 107; Wilson v.Goodrich, 218 Iowa, 462, 252 N.W. 142; Knight v. Farmers' Merchants' Gin Co., 159 Ark. 423, 252 S.W. 30.) The duty of the invitor, whether he expressly or impliedly invites another to come onto his premises, is generally stated in substantially the following language, viz.: "One who expressly or impliedly invites another to come on and use his premises owes the duty to the invitee of exercising reasonable care to see that the premises are reasonably safe." (Chichas v. Foley *Page 141 Bros. Grocery Co., supra; Eyerly v. Baker, 168 Md. 599,178 A. 691; F.W. Woolworth Co. v. Brown, 258 Ky. 29,79 S.W.2d 362; Gulf Refining Co. v. Moody, 172 Miss. 377,160 So. 559; Cleary v. Meyer Bros., 114 N.J.L. 120, 176 A. 187;Rogers v. J.C. Penney Co., 127 Neb. 885, 257 N.W. 252;Wilson v. Norumbega Park Co., 275 Mass. 422, 176 N.E. 514;City of Tulsa v. Harman, 148 Okla. 117, 299 P. 462; Turner
v. Carneal, 156 Va. 889, 159 S.E. 72; Cole v. North DanvilleCo-operative Creamery Assn., 103 Vt. 32, 151 A. 568; DeLee
v. T.J. Pardy Const. Co., 249 N.Y. 103, 162 N.E. 599; Adams
v. Barrell, 125 Me. 164, 132 A. 130; Langley v. F.W.Woolworth Co., 47 R.I. 165, 131 A. 194.)
The plaintiff was a bare licensee. His sole purpose in going to the defendant's garage was to accept a benefit or favor to himself, and he was therefore a mere licensee. (Aguilar v.Riverdale Cooperative Creamery Assn., 104 Cal.App. 263,285 P. 889; Kinsman v. Barton Co., 141 Wn. 311,251 P. 563; Coburn v. Village of Swanton, 94 Vt. 168, 109 A. 854;Laporta v. New York Cent. Ry. Co., 224 Mass. 100,112 N.E. 643; Midland Valley R. Co. v. Littlejohn, 44 Okla. 8,143 P. 1; Murphy v. Huntley, 251 Mass. 555, 146 N.E. 710, 37 A.L.R. 1447.)
The duty of a licensor is to refrain from inflicting wilful or wanton injury on the licensee. Recent decisions are almost uniform in holding that "the only duty which the owner of property owes to a trespasser or a licensee is to refrain from wilful or wanton injury." (Jonosky v. Northern Pacific Ry.Co., supra; Hall v. Southern California Edison Co., 137 Cal.App. 449,30 P.2d 1013; Alabama Baptist Hospital Board v.Carter, 226 Ala. 109, 145 So. 443; Pincock v. McCoy,48 Idaho, 227, 281 P. 371; Partridge v. United Elastic Corp.,288 Mass. 138, 192 N.E. 460; Wyatt v. Kansas City TerminalCo., (Mo.App.) 74 S.W.2d 51; Susquehanna Power Co. v.Jeffress, 159 Md. 465, 150 A. 788, 71 A.L.R. 1198; Collins
v. Sprague's Benson Pharmacy, 124 Neb. 210, 245 N.W. 602;Folley v. United Building Loan Assn. of Hackensack, (N.J.)178 A. 95; Jones v. Southern Ry. Co., 199 N.C. 1, *Page 142 153 S.E. 637; Harris v. Hummell, 50 Ohio App. 201, 197 N.E. 808;Midland Valley R. Co. v. Littlejohn, supra; McGinty v.Texas Power Light Co., (Tex.Civ.App.) 71 S.W.2d 354;Smith v. Seattle School Dist. No. 1, 112 Wn. 64,191 P. 858; Thalhimer Bros., Inc., v. Casci, 160 Va. 439,168 S.E. 433; 45 C.J., sec. 203, p. 798 et seq.)
Regardless of whether the plaintiff was an invitee, licensee, guest or trespasser, the defendant could not be liable unless he had knowledge of the alleged dangerous condition. (45 C.J. 651, sec. 25; p. 837, sec. 245; Doran v. United States Building Loan Assn., 94 Mont. 73, 20 P.2d 835; Glover v. Chicago,M. St. P. Ry. Co., 54 Mont. 446, 171 P. 278; Lowe v.Hippodrome Inn Co., 30 Ohio App. 520, 165 N.E. 749; KrogerGrocery Baking Co. v. McCune, 46 Ohio App. 291,188 N.E. 568; Sobel v. Lincoln Const. Co., (N.J.) 170 A. 617; 20 R.C.L. 13, sec. 9.) The allegations of the complaint are insufficient to charge that the defendant had knowledge of the alleged dangerous condition, and, resultantly, that he was under any duty to warn the plaintiff thereof.
If under any theory of this case it could have been contended there was a duty on the part of the defendant to have warned the plaintiff of the alleged danger, that contention could not be urged, for the reason the complaint does not allege any such duty or breach thereof. (45 C.J. 1073; Locke v. Payne, 81 N.H. 266,124 A. 668; McGinty v. Texas Power Light Co., supra;Farmers' Merchants' Warehouse Co. v. Perry, 218 Ala. 223,118 So. 406.)
Counsel for plaintiff say in effect that the duty of defendant included adequate inspection of his truck. As pointed out inMarple v. Haddad, 103 W. Va. 508, 138 S.E. 113, "The defendant owed him [the guest] no duty of prior inspection. `He who enters an automobile to take a ride with the owner takes the automobile and the driver as he finds them.'" It was held inHowe v. Little, 182 Ark. 1083, 34 S.W.2d 218, that the "driver need exercise only ordinary care in operating automobile for safety of invited guest * * * and for guest's protection, owner is not required to make inspection for *Page 143 
defects in automobile, or loose objects lying thereon." (See, also, Higgins v. Mason, 255 N.Y. 104, 174 N.E. 77; Eubanks
v. Kielsmeier, 171 Wn. 484, 18 P.2d 48.)
This action was brought to recover damages for personal injuries sustained by the plaintiff while on defendant's premises, through the alleged negligent and careless operation of a truck by the defendant. The cause was tried before the court sitting with a jury, and at the close of the testimony on behalf of the plaintiff a motion for nonsuit was made by the defendant, which was granted. Thereupon a judgment of dismissal was entered. Plaintiff has appealed from this judgment. By appropriate specifications of error a review of the ruling of the trial court on this motion is sought.
Plaintiff, a man 53 years of age, was employed in the fall of 1933 as assistant tareman for the Great Western Sugar Company at Worden, Montana. He commenced work on the 2d of October of that year, and on the evening of the 14th went to the home of Charles Horton, who was his nephew and at whose home he had been taking a part of his meals while so employed, for which he paid agreed compensation. On the evening of this day his purpose in going there was to pay Mrs. Horton for his board for the week and to secure his laundry, which he had left there at noon. He remained there for the evening meal. After he had finished, he told the defendant, Horton, that he was going to his mother's to spend Saturday night and Sunday, who lived three and a half miles west and a little north of Worden. The defendant said, "Wait a minute and I will take you over." Plaintiff replied, "No, you don't need to take me over. For that matter, I could walk in a little while. There is plenty of people going over that way." Defendant said he had to go over anyway, that he had been hauling water from there, and he also had to take his brother, Paul Horton, home.
Thereupon plaintiff and defendant left the house and proceeded to the garage. The evening was dark and it was raining. *Page 144 
The wind was blowing "pretty hard" from the west. Defendant's garage stood north and south, with the doors in the south end. It was a small garage, and within it defendant had a truck with a body on it which was used for the hauling of beets. The clearance between the sides of the doorway and the body of the truck was a matter of approximately eight inches. On each side of the body of the truck were wings which were on hinges and capable of falling outward. When the truck was loaded with beets, these wings were held upright by means of chains. During the day Paul Horton, the brother of defendant, had been engaged in hauling beets; and, while the plaintiff was in the house listening to the radio, he saw Paul Horton shovel the dirt out of the truck and drive it into the garage. The wings mentioned were 23 or 24 inches wide; they had been placed in an upright position but not chained. The truck was comparatively new and the hinges were stiff, so that when the wings were placed in an upright position they would remain in that position without fastening the chains, unless the truck was jarred. There was no method for fastening the garage doors back, and the defendant requested the plaintiff to take hold of the west door and hold it open. The plaintiff testified: "I took hold of the door and pulled it open and held it. I stood back as far as I could back up against the brace from the post at the corner of the garage. In the position I was standing, the car could not strike me if it backed out straight." Defendant went into the garage, started the car, turned on the lights, and proceeded to back out of the garage. One witness testified as to the backing of this car. "He backed out real fast." Another testified: "The truck came out unusually fast. Defendant did not back the car out straight." Plaintiff described the movement of the truck as follows: "It seemed like he cut the truck so that the back end of it swung to the southeast throwing the front part over. In backing out, the truck caught on the side of the door frame on the southwest — on the west side of the door — the door was hung on, and split the studding. The front corner of the truck hit the door frame." The wing of the truck came down, struck the plaintiff, *Page 145 
and inflicted personal injuries. The force of the blow threw the plaintiff some fifteen feet. Plaintiff's position, as testified by him, in holding the door was against a brace between two posts.
In Mellon v. Kelly, 99 Mont. 10, 41 P.2d 49, 52, we[1] said: "This court has often announced the rule that upon motion for nonsuit or directed verdict the evidence must be viewed from the standpoint most favorable to plaintiff, and every fact must be deemed proved which the evidence tends to prove. (Nangle v. Northern Pacific R. Co., 96 Mont. 512, 32 P.2d 11.) No case should ever be withdrawn from the jury when reasonable men might draw different conclusions from the evidence."
Plaintiff contends that the relation between the parties to[2] the action at the time he sustained the injury was that of invitor and invitee; whereas the defendant contends that the relation at the time was that of licensor and licensee. If the contention of plaintiff is correct, then defendant owed the plaintiff the positive duty to exercise reasonable care for his safety. If, however, the contention of defendant is sustained, then his only duty owing to plaintiff was to refrain from wanton or wilful acts which might occasion injury. (Fusselman v.Yellowstone Valley L. I. Co., 53 Mont. 254, 163 P. 473, Ann. Cas. 1918B, 420; Jonosky v. Northern Pacific R. Co.,57 Mont. 63, 187 P. 1014; Chichas v. Foley Brothers GroceryCo., 73 Mont. 575, 236 P. 361.)
As a general rule, the few decisions on the question hold that[3] the relation between a host and a guest on private premises is not that of invitor and invitee, but is that of licensor and licensee. (Greenfield v. Miller, 173 Wis. 184,180 N.W. 834, 12 A.L.R. 982; Comeau v. Comeau, 285 Mass. 578,189 N.E. 588, 92 A.L.R. 1002.) The relation, however, existing between the parties to this action at the time of the occurrence of the injury was something more than that of host and guest. Plaintiff was at the time of the injury performing a service for the benefit of the defendant, and at his request. If the plaintiff did not at that particular time occupy the position *Page 146 
of a gratuitous employee, he at least was an invitee. Our conclusion is supported by what this court said in the case ofListon v. Reynolds, 69 Mont. 480, 223 P. 507.
Counsel for the defendant has cited a host of authorities which correctly announce the rule as to the duty of a licensor owing to a licensee. Without pausing to review these decisions, we may say of them, generally, that they do not relate to a state of facts where the person held to be a mere licensee was performing a service for the licensor, as in this case, and we therefore think they are of no persuasive value here.
Defendant contends that plaintiff was guilty of contributory[4] negligence as a matter of law. It appears that plaintiff was familiar with the premises, with the particular truck, the use and operation of beet trucks, and the fact that the wings could be, and frequently were, closed without hooking the chains. It is further argued that plaintiff could have occupied a position of greater safety, although the evidence is to the effect that, if the truck had been backed out so that it did not strike the side of the garage doorway, the wing would not have fallen and plaintiff would not have been injured.
Mere knowledge of the existence of an offending instrumentality at the place where an injury is suffered does not raise a legal presumption of contributory negligence, unless it further appears that the plaintiff had reason to apprehend danger. (Hughey v. Fergus County, 98 Mont. 98,37 P.2d 1035; Mullins v. City of Butte, 93 Mont. 601,20 P.2d 626; Neilson v. Missoula Creamery Co., 59 Mont. 270, 196 P.[5] 357.) The failure to anticipate negligence which results in injury is not negligence and will not defeat the action for the injury sustained. (20 R.C.L. 118; Central R.R. Co. v. DeBusley, (C.C.A.) 261 Fed. 561; Wagner v. Philadelphia RapidTransit Co., 252 Pa. 354, 97 A. 471; North Bend Lumber Co.
v. Seattle, 116 Wn. 500, 199 P. 988, 19 A.L.R. 415.)
Defendant contends that the complaint was insufficient, in[6, 7] that it was not alleged that he had any knowledge of the alleged danger to which plaintiff claimed he was subjected. The allegation to which this contention is directed *Page 147 
was that the defendant was in a position to know, and knew, or could and should have known, that the chains holding the wings were not fastened. Such an allegation is no stronger than the weakest alternative (Pollard v. Oregon Short Line R. Co.,92 Mont. 119, 11 P.2d 271); and, where it is incumbent upon plaintiff to plead and prove actual notice or knowledge, such an allegation is insufficient, as illustrated by numerous decisions of this court in actions brought upon the "last clear chance" theory, collected and referred to in the Pollard Case, supra, and also in certain cases involving bailments. (Dickason v.Dickason, 84 Mont. 52, 274 P. 145.) The case here, however, does not fall into either of these classes. We think the complaint was sufficient. The proof, which was admitted over objection, and which therefore cannot aid the allegation of the complaint — it may be noted in passing — was to the effect that defendant had admitted he knew the wing was not fastened, and also that he had directed his brother, who had been using the truck, not to fasten the wings when the truck was not loaded.
It appears from the record that this cause had theretofore[8] been tried upon a similar complaint and resulted in a judgment of nonsuit. Defendant has made a cross-assignment of error seeking a review of the ruling of the court in refusing to admit the judgment-roll in the previous action. Defendant contends that this judgment-roll, if admitted, would have sustained the affirmative plea in his answer of res judicata.
Section 9320, Revised Codes 1921, provides: "A final judgment dismissing the complaint, either before or after a trial, does not prevent a new action for the same cause of action, unless it expressly declares, or it appears by the judgment-roll, that it is rendered upon its merits." The judgment-roll which was offered does not expressly declare that it was upon the merits, nor does it so appear therefrom. We have said a judgment of nonsuit is not a judgment on the merits, and nothing short of a judgment on the[9] merits can prevent a new action. (Arnold v.Genzberger, 96 Mont. 358, 31 P.2d 296; Bennetts v.Silver Bow Amusement Co., 65 Mont. 340, *Page 148 211 P. 336; Glass v. Basin Bay State Min. Co., 35 Mont. 567,90 P. 753, 755.)
Counsel for the defendant relies upon the case of Dunseth v.[10] Butte Electric R. Co., 41 Mont. 14, 108 P. 567, 21 Ann. Cas. 1258, and we find therein some language which, perhaps, standing alone, lends color to his contention. The precise question there under consideration, however, was whether a judgment on a directed verdict is always and necessarily a judgment upon the merits. The court in deciding that question made some reference to the decisions with relation to a judgment of nonsuit. As we have so often observed, general expressions in the court's opinions are to be taken in connection with the case under consideration. (Williams v. Anaconda Copper Min. Co.,96 Mont. 204, 29 P.2d 649.)
The trial court was not in error in excluding the judgment-roll; it was, however, in error in sustaining defendant's motion for nonsuit. Accordingly, the judgment is reversed, and the cause remanded to the district court of Yellowstone county, with direction to grant the plaintiff a new trial.
MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur. *Page 149