## BLINN, Appellant, *v.* HATTON, Respondent.

(No. 8,169.)

(Submitted May 27, 1941. Decided June 17, 1941.)

[114 Pac. (2d) 518.]

*Mr. E. J. Stromnes* and *Mr. J. L. Mayland,* for Appellant, submitted a brief; *Mr. Stromnes* argued the cause orally.

*Messrs. Gilbert & Gilbert,* for Respondent, submitted a brief; *Mr. W. G. Gilbert* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment entered after the court sustained the defendant's motion for a nonsuit. The complaint alleges that on the 16th day of July, 1938, the plaintiff "with the consent of and by the invitation of the defendant" was riding with the defendant in the defendant's automobile and that the defendant "ran, drove and operated said automobile in such grossly negligent, grossly careless and grossly reckless manner as to cause said automobile to be driven off said highway and overturn and plaintiff was by reason thereof severely, grievously, painfully and permanently injured."

As acts of negligence the plaintiff alleges (1) operation at excessive speed, (2) failure to keep the automobile under control, (3) permitting the car to run off the highway and overturn by driving on soft shoulders, (4) attempting to pass another automobile when not having sufficient space, and (5) failure to give reasonable signals.

Under the allegations of the complaint and the evidence in ▮ support thereof, the action is within the purview of our guest statute—sections 1748.1 to 1748.3, inclusive, Revised Codes. Therefore, in order for the plaintiff to recover he must show that his injuries were caused by the grossly negligent and reckless operation of the car by defendant, within the meaning of the statute.

In granting the motion for nonsuit the court determined that there was no evidence to sustain the charge of grossly negligent and reckless operation on the part of the defendant, and, hence, that recovery could not be had upon any view which could reasonably be drawn from the evidence. The plaintiff assigns the granting of the nonsuit as error.

In considering the propriety of the court's action in sustaining ▮ the motion, we must deem every fact proved which the evidence tends to prove, and interpret the evidence in the light most favorable to plaintiff. (*McCulloch* v. *Horton*, 102 Mont. 135, 56 Pac. (2d) 1344; *Meineke* v. *Intermountain Transportation Co.*, 101 Mont. 315, 55 Pac. (2d) 680; *Park* v. *Grady*, 62 Mont. 246, 104 Pac. 382.)

The evidence shows that the plaintiff was a guest in defendant's car on a trip from Dillon to Bozeman and return. The facts tending to show negligence are the following: On the trip from Butte to Dillon, and prior to the accident, defendant demonstrated to plaintiff how fast his car could go. Plaintiff testified he (speaking of defendant) ran the speed of the car up "to between seventy-five and eighty miles an hour. I cautioned him and said that is faster than I care to travel. I said that I was in an accident prior to this when Mr. Cashmore was driving the car and I said that since then I had slowed down my driving and I didn't care to drive that fast. He slowed it down. We did travel about sixty to sixty-five miles an hour after that."

Plaintiff in explaining what happened just before the accident testified:

"Q. As you were proceeding on your way home from Butte do you recall overtaking a truck ahead at any point on Highway 91? A. Yes, I do.

"Q. You may explain to the jury about where that was. A. Well, when we first observed the truck was on the Butte side of the Continental Divide as you come up what is commonly called Feeley Hill. * * * As we were coming up that we approached this truck. It was a light truck unloaded. It didn't have any load in it. It was traveling not exactly in the center of the road but it was traveling across the white line. Mr. Hatton approached it from the rear.

"Q. About how fast was he driving at that time? A. I should judge we were going around fifty or fifty-five miles per hour, because it was upgrade we were not going as fast as we had been. The truck was going at a little lesser speed and we overtook the truck. Mr. Hatton just prior to overtaking it pulled to the left side of the road, apparently going to pass the truck.

"Q. Did he give any signal to evidence that intent? A. Yes, as he got within a reasonable distance of the truck he gave a blast with his horn and the man in charge of the truck apparently didn't hear him, at least he didn't respond to the sign signal at all and he continued to drive where he was. He was driving in kind of a weaving fashion; his truck coming closer to the center of the line but never entirely clearing the road. Mr. Hatton was cautious and when he saw that the man was not going to give the road he pulled back to his own position on the right hand side of the road. We were then approaching some of the curves which are near the top of this road on the west side of the divide, on the Butte side, and going around one of the curves only for a moment we lost sight of this truck. Naturally, dropping back we lost some speed and momentum and the truck gained on us; he maintained his speed. This truck didn't come in sight of us again until we came to the crossing of the divide and as we came over the crossing of the divide and as we came over the crossing or the crest, the level part on the top of the divide, the truck was in view. * * * As we started down the divide Mr. Hatton picked up speed and overtook him. We had gotten down part way down on the lower or Dillon side of the Continental Divide on the hill and

as we were going down the grade after you leave the flat part Mr. Hatton pulled up again in the back of this truck. The truck was being operated in the same manner. It was over the white line with his left wheel. While I would not say it was exactly in the center of the road, still it had the road blocked so that it was not proper to pass it. Mr. Hatton again pulled up back of the truck and as we got within a short distance, I would say perhaps a little over a car length or so of the truck, he gave another short blast with his horn and the driver apparently didn't hear or ignored it at least or the rattle of his own dilapidated truck was such that he could not hear it. I don't know the cause. He may have been drunk. I don't know what the condition of the driver was or who he was. He didn't give us the road. He made a swerve back and forth with his car but he never cleared the white line. Mr. Hatton instead of pulling back as he had done on the prior occasion attempted to go around the car when the road was not clear. We didn't travel very far before the car made another lurch that threw it further over the white line to the left and we went off onto the shoulder with the left wheel of the Nash, that is, Mr. Hatton went off the shoulder which was soft and the car plunged into the barrow pit and upset.''

The question whether one is guilty of grossly negligent and ▮ reckless operation is one for the jury. (*Nangle* v. *Northern Pac. Ry. Co.*, 96 Mont. 512, 32 Pac. (2d) 11; *Baatz* v. *Noble*, 105 Mont. 59, 69 Pac. (2d) 579.) However, this rule is necessarily subject to the limitation that, if on the evidence reasonable men can come to only one conclusion, there is no question for it to decide. (*McCulloch* v. *Horton,* supra; *Nangle* v. *Northern Pac. Ry. Co.,* supra.)

In this case we find evidence that the defendant was aware ▮▮ of the negligent and weaving driving of the truck ahead, attempted to pass once and had to retire, and then attempted a second time to pass the truck when it was necessary to go on the shoulder of the road and at a speed of sixty miles per hour on a down hill run and when the driver of the truck had failed

to give him the right of way. We must conclude that this evidence was sufficient to make it a question for the jury whether the overturning of the car and the consequent injuries to plaintiff were caused by the grossly negligent and reckless operation by defendant. (See cases on similar facts contained in *Naudzius* v. *Lahr* [253 Mich. 216, 234 N. W. 581], 74 A. L. R. 1198; 86 A. L. R. 1154; *Meyer* v. *Hart*, 110 Conn. 244, 147 Atl. 678.) We have held that it is negligence for the driver of one car to pass another going in the same direction under conditions which are not reasonably safe. (*State* v. *Biering*, 111 Mont. 237, 107 Pac. (2d) 876.) Whether in doing so here defendant was grossly negligent or reckless was for the jury to determine.

The court erred in granting the motion for nonsuit. The judgment is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON, ANDERSON and MORRIS concur.