No. 12270

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

JESSIE A. STEPHENS, Executrix of the
Estate of Franklin P. Stephens, Deceased,

Plaintiff and Respondent,

-vs-

GLEN BROWN,

Defendant and Appellant.

---

Appeal from: District Court of the Eleventh Judicial District,
Honorable Robert C. Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Marshall H. Murray argued, Kalispell, Montana.
Joseph F. Daley, Kalispell, Montana.

For Respondent:

Korn, Warden, Walterskirchen and Christiansen,
Kalispell, Montana.
Merrit N. Warden and Gary R. Christiansen argued,
Kalispell, Montana.

---

Submitted: October 17, 1972

Decided: NOV 1 7 1972

Filed: NOV 1 7 1972

_Thomas J. Kearney_
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment notwithstanding a verdict, which judgment was granted on the issue of liability with damages to be determined on a new trial. Plaintiff brought the action in Flathead County in the eleventh judicial district to recover special, general and punitive damages against defendant on two counts, survivorship and wrongful death. Punitive damages were withdrawn during trial. The jury rendered a verdict for defendant. Subsequently, plaintiff moved for judgment notwithstanding the verdict and for a new trial. The court ordered judgment entered against the defendant on the issue of liability, and set the issue of damages for trial.

On June 21, 1970, at 9:50 p.m., on Whitefish Lake, a collision occurred between two outboard motor boats. The sun had just set but it was still daylight, visibility was good, the lake was calm and the weather clear.

One of the boats was owned by Frank Stephens, the other by Glen Brown. Stephens and Brown were next door neighbors on the lake. The Stephens boat was a 14' fiberglas Glastron, powered by a 55 H.P. Evinrude. It had a little over a foot of freeboard; pushbutton electric controls; and two bucket seats facing the front, which were divided by a deep console. The steering wheel was on the right; as were the shift controls and throttle.

The Brown boat was a 17' aluminum Flying Crest, powered by an 85 H.P. Evinrude. It was higher off the water than the Stephens boat and had similar controls. It had bench type seats, a front one and two side seats.

After an afternoon of golf and a Father's day evening barbecue, Glen Brown and three guests went for a cruise on the lake. They had had cocktails earlier and one of their number took the bottle of bourbon along. Driving the boat was Glen Brown. After they had cruised up the lake, Brown increased his

speed on his return to about 25 miles per hour. The occupants were watching the scenery and activities ashore.

The Stephens boat had just started a trip up the lake. Frank Stephens was driving, his wife seated in the bucket seat to the left. Mrs. Stephens could not operate the boat. She testified that Frank noticed the rear light was flickering. He pushed the neutral button on the controls and, asking his wife to hold the steering wheel, went to the rear near the light. Mrs. Stephens remained seated in the passenger's seat opposite the controls and out of their reach. She testified that the boat was in neutral and dead in the water or just drifting.

An eyewitness, on shore and far enough away from the scene that he could not see people, testified the Stephens boat was moving "slow"; "wasn't throwing a wake"; "Moderate speed, two miles an hour maybe. Just barely going along, barely cruising"; "moving but it wasn't dead".

While Frank Stephens was in the rear of his boat fixing the light, Mrs. Stephens was enjoying the scenery. She observed a large boat traveling at a high rate of speed, but gave no thought to it. Later she again observed the Brown boat traveling towards them at high speed, but she was not concerned because they were clearly visible and there was ample opportunity for the operator to turn to avoid them. But, she next saw the Brown boat bearing down on her husband and herself from a short distance and realized that its operator had not seen them. She stood up and screamed, in a vain effort to attract the attention of Brown.

The Brown boat never saw the Stephens boat and struck it, the point of contact about midship on the right side. The Brown boat struck with such an impact as to go completely up and over the Stephens boat, striking Frank Stephens on the head and body and knocking him out of the boat into the water, where he died from drowning. One passenger in the Brown boat was thrown into the water. The Brown boat righted itself and was able to pick up its passenger from the water. Frank Stephens' body was re-

covered the next day. Mrs. Stephens was bruised in the collision
and Brown and one of his passengers were injured.

Mrs. Stephens brought this action as executrix of the estate
of Frank Stephens.

The issues on appeal are:

1. Did the court err in denying defendant the defense of
contributory negligence?

2. Did the court err by granting judgment notwithstanding
the verdict on the question of liability?

3. Did the court err in denying defendant's motion for
summary judgment and motions to dismiss or for nonsuit or
directed verdict and thus allow the survivorship claim to go
to the jury?

4. Did the court err in denying defendant's offers of
proof:

(a) To the question of admission of the deceased's will?

(b) To the question of instantaneous death and appreciable
period of time?

Directing our discussion to issues 1 and 2 together, we
shall attempt to set up the problem without giving all the
details of efforts to amend the pleadings, rulings on evidence,
instructions given, and even tactics of counsel. Suffice it to
say that the issue of contributory negligence on the part of
the deceased Frank Stephens and the plaintiff, his widow and
beneficiary of his estate, was permitted in the case. Substan-
tially for this reason the trial judge granted the motion for
judgment notwithstanding the verdict on the issue of liability.
In other words, he held finally, as a matter of law, that the
sole proximate cause of the death of Frank Stephens was the
negligence of defendant Brown.

Appellant, defendant Brown, contends on appeal that the
evidence presented was sufficient to establish a fact question
for the jury on contributory negligence of deceased Frank
Stephens, for having abandoned his controls to his wife who

- 4 -

knew nothing about operating a boat and failing to keep a proper lookout. Defendant also urges that plaintiff took no evasive action after observing Brown's boat and did not warn her husband in time.

Here we have a wide open lake, Stephens' boat drifting or moving very slowly, a scene duplicated thousands of times yearly in any cruising or fishing scene. The occupants inattentive. They might be fishing, sunbathing, or merely tinkering with a light, as here. Coming at them at high speed, a boat under considerable power, its driver and occupants not looking ahead at what is plainly visible with a wanton disregard for the safety of others, smashes into them. The sole proximate cause as a matter of law is the negligence of the blindly speeding boat. Defendant urges right-of-way rules, maritime law, and that a fact question exists; but it simply does not as to the sole proximate cause of the accident.

Our conclusion, as was that of the trial court, does not require us to discuss whether or not the contributory negligence of a beneficiary would be a bar to recovery. We make the comment only because defendant's brief on appeal dwells at length on the subject.

Before it is proper to submit the question of contributory negligence to the jury, there must be evidence not only indicating negligence on the part of plaintiff but also that such negligence contributed as a proximate cause to the accident and resulting injuries. DeVerniero v. Eby, ____Mont._____, 496 P.2d 290, 29 St.Rep. 273, and cases cited therein.

Defendant cites Sullivan v. John Doe, ____Mont._____, 495 P.2d 193, 29 St.Rep. 190, for the proposition that before a plaintiff can recover he must show that he exercised his intelligence to discover and avoid the danger which he alleges was brought about by the negligence of defendant. However, except that the positions of plaintiff and defendant are reversed,

- 5 -

Sullivan supports our holding here. There, a police car driver was held as a matter of law to have seen a parked car on the street clearly visible, if he had looked.

Defendant also cites Hoffman v. Herzog, 158 Mont. 296, 491 P.2d 713, 28 St.Rep.1009, and Shields v. Murray, 156 Mont. 493, 481 P.2d 680, for the proposition that a case should not be withdrawn from a jury where reasonable and fair-minded men could reach opposite conclusions. In each case, there was conflicting evidence and we declared we were unable to say that the evidence permitted but one inference; and that a jury question was posed. However, as we heretofore have described the facts here, taking the facts in defendant's view---they lead to but one conclusion.

In issue 3, defendant's contention goes to the survivorship claim. That is, defendant urges that the death of Frank Stephens was instantaneous and therefore there was no basis for an action based upon his surviving his injuries, under the provisions of section 93-2824, R.C.M. 1947. The issue was raised by defendant before trial by motion for summary judgment and during trial by motion for nonsuit or dismissal and by motion for directed verdict. On each occasion defendant was denied relief.

The evidence established that Frank Stephens received multiple serious injuries to his head, neck and body when struck by the Brown boat while he was still in his own boat. He was then propelled by force into the water where he died from drowning. A pathologist testified from his findings on autopsy that the injuries, though serious, would not by themselves have caused death. He further testified that the death could result "within a few seconds or a couple of minutes". As defendant describes it here, the deceased died from drowning while unconscious, obviously without struggle, pain or anguish.

On the other hand, plaintiff states that since Stephens died from drowning, he survived his injuries for an appreciable length of time.

- 6 -

Section 93-2824, R.C.M. 1947, provides in pertinent part:

"An action * * * shall not abate by death * * * but shall in all cases, where a cause of action or defense arose in favor of such party prior to his death * * *survive, and be maintained by his representatives or successors in interest * * *".

In the year 1909, this Court speaking through Mr. Justice Holloway, in discussing a similarly worded survival statute contained in the fellow servant statute passed in 1907, (now section 41-110, R.C.M. 1947), in the case of Dillon v. Great Northern Ry. Co., 38 Mont. 485, 496, 100 P. 960, had this to say:

"With these elementary principles before us the question recurs, Is it possible for one who is instantly killed to have a cause of action for the wrong which caused his death? The very statement of the question would seem to suggest its own answer. Since there is not any appreciable length of time between the wrong and the death, or in other words, the wrong and the death being coincident in point of time, the instant the wrong is committed the victim of the wrong has ceased to exist, and it seems impossible that there is any cause of action in favor of such victim. This conclusion seems inevitable when the elements which are considered in determining the measure of damages are taken into account. Those elements are physical and mental pain and suffering, expense of medical attendance, loss of time, and decreased earning capacity. In the case of instant death every one of those elements is absent. To presume the existence of any one of them is to presume that life did not become extinct until some appreciable time had elapsed after the wrong was committed, a fact which is negatived by the agreed statement of facts in this case."

Justice Holloway put forth the instant death and survival for an appreciable time language applied since that time. In Welch v. Nepstad, 135 Mont. 65, 337 P.2d 14, the deceased was severely bruised over the right eye and temple, bruised on the chest, back, upper arms and hand; the truck he was riding in was thrown into about two and one-half feet of muck, slime and water in a sump hole beside the road; and, death was by drowning. There a doctor testified, in his opinion, that five to seven minutes elapses for death to occur in drowning. This Court held such evidence was sufficient to show survival for an appreciable length of time.

Defendant here states that <u>Welch</u> passes over the specific question. In fact, it did not "pass over it" but held squarely that such evidence was sufficient to show a "survival for an appreciable period of time." We see no reason to depart from that ruling and find no merit in issue 3.

In issue 4, defendant claims error on the part of the trial court in refusing to permit the introduction into evidence of the will of decedent to establish that plaintiff was the sole beneficiary of her husband's estate. The reasons given were to show the interest of the widow as a witness and to aid defendant in his argument on damages. We shall not dwell at length on this issue, because in the context of the trial the interest of the widow was obvious. The will could not possibly have made it more obvious. Neither do we see any prejudice on the defendant's argument on damages.

Finally, also in issue 4, defendant urges error in the trial judge's refusal to permit the defendant to recall the pathologist for the purpose of having him express an opinion that the death from drowning was instantaneous. We have already shown that the witness had testified to these facts and his opinion. Thus, no error appears.

Having considered all of the issues presented and finding no error, we affirm.

------------------------------
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

------------------------------
Associate Justices.